BLUE CROSS/BLUE SHIELD OF CONNECTICUT, INC.
*v.* WALTER S. GURSKI, JR.
(AC 17560)

O'Connell, C. J., and Spear and Dupont, Js.

Submitted on briefs June 5—officially released August 11, 1998

*Richard A. Smith* filed a brief for the appellant (defendant).

*Julie A. Manning* filed a brief for the appellee (plaintiff).

*Opinion*

DUPONT, J. This case is an appeal by the defendant from a judgment for the plaintiff, after a hearing in damages, in the amount of $28,584.93 and attorney's fees in the amount of $25,760. The defendant also appeals from the trial court's denial of his motion to open a judgment by default for failure to plead.

The defendant claims that the trial court, *Stodolink, J.*, improperly failed to open a judgment of default, and that the trial court, *Grogins, J.*, improperly (1) prevented him from introducing certain evidence, (2) admitted the plaintiff's affidavit of debt and affidavit of attorney's fees and (3) awarded the plaintiff attorney's fees.

The plaintiff's complaint sought damages for health insurance fraud, misrepresentation, a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., breach of fiduciary duty and conversion. The defendant is a podiatrist who performed professional services pursuant to an agreement with the defendant for reimbursement. The gist of the allegations in the complaint is that the defendant breached a participating podiatrist agreement and improperly billed the plaintiff for services rendered.

The first issue to be resolved is whether the trial court abused its discretion in denying the defendant's motion to open the default judgment as to liability only rendered in favor of the plaintiff for the failure of the defendant to plead. The plaintiff claims that this court's dismissal of the appeal by the defendant from the denial of his motion to open that judgment prevents the defendant from now asserting, in this appeal from the judgment rendered after a hearing in damages, any impropriety in failing to open the default judgment as to liability.

The plaintiff is incorrect in asserting that the denial of the defendant's motion to open the judgment cannot be an issue on appeal from the final judgment after a hearing in damages has been held. The defendant could not appeal from the denial of his motion to open the default judgment before a hearing in damages had taken place because there was no final judgment at that time. *Automotive Twins, Inc.* v. *Klein*, 138 Conn. 28, 35, 82 A.2d 146 (1951); *Economics Laboratory, Inc.* v. *Reber*, 9 Conn. App. 801, 515 A.2d 664 (1986). A judgment as to liability only, without a judgment for damages, is not an appealable final judgment. *Pinnix* v. *LaMorte*, 182 Conn. 342, 343, 438 A.2d 102 (1980).

As a general rule, when an order is interlocutory and cannot be the basis of an immediate appeal, that order

and any other interlocutory orders that were adverse to the appellant can be assigned as error and reviewed in an appeal taken from the final judgment in the case. See W. Maltbie, Connecticut Appellate Procedure (2d Ed. 1957) § 15, pp. 17–19; see also General Statutes § 52-263. Review of an interlocutory ruling "must await an appeal from the final judgment . . . ." *Hartford Federal Savings & Loan Assn.* v. *Tucker*, 192 Conn. 1, 5, 469 A.2d 778 (1984); see also *Prevedini* v. *Mobile Oil Corp.*, 164 Conn. 287, 294, 320 A.2d 797 (1973).

The action of a trial court in granting or refusing a motion to open a judgment is generally within the discretion of that court. *Eastern Elevator Co.* v. *Scalzi*, 193 Conn. 128, 131–32, 474 A.2d 456 (1984). A review of the pleadings and the court's reasons for denying the defendant's motion to open the default judgment is necessary to determine whether there was an abuse of discretion.

The plaintiff's complaint was returnable on September 26, 1995. On October 4, 1995, the plaintiff filed a motion for default for failure to appear, which was granted on October 5, 1995. An appearance was filed by the defendant on October 11, 1995, and on October 17, 1995, the defendant's motion to admit an attorney pro hac vice was filed, which motion was granted on November 14, 1995. On October 27, 1995, the plaintiff's motions for a default for failure to plead and for judgment after default were simultaneously mailed to the defendant, according to the plaintiff's certification of service on the motions.[1] On November 1, 1995, the defendant filed a motion for extension of time to plead for thirty days from the date the motion for pro hac vice counsel was granted. The plaintiff objected to the motion for extension of time on December 13, 1995.

---

[1] The motions are both dated October 27, 1995, but the trial court file is not clear as to the date of filing.

The defendant's motion for extension of time in which to plead was denied on February 5, 1996. The motion for default for failure to plead was granted on January 11, 1996, and the motion for judgment by default was granted on February 5, 1996, the same date that the case was placed on the hearing in damages list, and the same date that the defendant's objection to the plaintiff's motions for default and judgment dated October 27, 1995, was overruled. The defendant's objection was certified as having been mailed on October 31, 1995.

The defendant filed a motion to open the default, service certified on January 12, 1996, one day after the motion for default for failure to plead was granted. At the time the motion for default for failure to plead was granted, the defendant's motion for extension of time in which to plead was still pending, as was his objection to the plaintiff's motion for default and judgment. On February 7, 1996, the defendant swore to a verified motion to open judgment by default and certified to its mailing on the same date. The motion was argued on March 25, 1996, and denied the same day in open court.

The defendant's attorney, in his verified motion, claimed that he had not promptly pleaded because on October 22, 1995, his wife received a telephone call informing her that her father was near death. The family left immediately for Fall River, Massachusetts, where her father died the next day. The plaintiff does not dispute that the telephone call and the death actually occurred. The defendant's affidavit indicated that the attorney was away from his office until October 27, 1995. As previously noted, the defendant filed a motion for extension of time in which to plead on November 1, 1995, and an objection to the plaintiff's motions for default and judgment was dated October 31, 1995.

At oral argument on March 25, 1996, the defendant's counsel stated that he had not previously raised the

death of his father-in-law as the reason for the late filing of an answer because he did not want to use that death as an issue. He said that he opted instead to raise legal issues as stated in his October 31, 1995 objection to the plaintiff's motions for default and judgment.

The plaintiff argued that the defendant did not need an extension of time in which to plead because many of the same issues had been raised in a prior bankruptcy proceeding involving the defendant and the same pro hac vice attorney. The trial court denied the motion to open the judgment because counsel had had an opportunity to raise all of the same factors for the opening of the default judgment on February 5, 1996, and did not do so.

The trial court also stated that it did not view the consequences of the judgment by default as serious. The court explained its view as follows: "Well, a hearing in damages is not one sided. You're allowed to be heard on any of the issues that are raised. The only question is you can't dispute, technically, liability. But the amount of that liability can always be disputed. And so, theoretically, if [the defendant] had no liability, then even in a hearing on damages, [the plaintiff] would be unsuccessful in getting any money. So, that I can—I don't see anything overwhelming about the situation. You still can be heard in a hearing in damages. It's not one sided by my understanding."

The defendant argued at the hearing on his motion to open the default judgment that more than money was at stake because the plaintiff's complaint alleged fraud and criminal conduct of the defendant, which would interfere with his ability to earn a living because his license to practice podiatry might be affected and that, therefore, the judgment by default carried with it an onus beyond a liability for money damages.

Neither the defendant nor the plaintiff can be accused of delinquency in their pleadings. The motion for judgment after default for failure to plead was mailed simultaneously with the motion for default to the defendant, thirty-one days after the return day, sixteen days after the defendant had appeared and ten days after the defendant had moved to admit an Ohio attorney as pro hac vice. On November 1, 1995, the defendant filed a motion for extension of time,[2] and an objection to the plaintiff's motions for default and judgment by default for failure to plead. The defendant's objections were based on his claimed compliance with Practice Book § 114, now Practice Book (1998 Rev.) § 10-8.[3] He claimed that the time for filing a responsive pleading had not yet passed.

The plaintiff's motions for default and judgment were mailed on October 27, 1995, just after the thirty days had expired. Shortly thereafter, the defendant filed a motion for extension of time to plead, and an objection to the plaintiff's motions for default and judgment by default. At the time the motion for default for failure to plead was granted, the defendant's motions for extension of time to plead, and his objections to the plaintiff's motion for judgment by default had not yet been acted on. We agree with the defendant that on the facts of this case and the state of pleadings when the motion to open the judgment was denied on March 25, 1996, it was an abuse of discretion not to open the judgment. The defendant was prejudiced by the denial and showed that there was good cause for the setting aside of the

[2] The plaintiff objected to the motion for an extension of time on December 13, 1995.

[3] Practice Book § 114, now Practice Book (1998 Rev.) § 10-8, provides in part that pleadings "shall first advance within thirty days from the return day, and any subsequent pleadings, motions and requests shall advance at least one step within each successive period of fifteen days from the preceding pleading or the filing of the decision of the court thereon if one is required . . . ."

judgment and that he was prevented by reasonable cause from defending the action. See Practice Book § 377, now Practice Book (1998 Rev.) § 17-43.[4] We do not, therefore, reach the issues relating to the hearing in damages.

The judgment of default is reversed and the case is remanded for further proceedings.

In this opinion the other judges concurred.

[4] Practice Book § 377, now Practice Book (1998 Rev.) § 17-43 (a), provides in relevant part: "Any judgment rendered or decree passed upon a default or nonsuit may be set aside within four months succeeding the date on which notice was sent, and the case reinstated on the docket on such terms in respect to costs as the judicial authority deems reasonable, upon the written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of such judgment or the passage of such decree, and that the plaintiff or the defendant was prevented by mistake, accident or other reasonable cause from prosecuting or appearing to make the same. . . ."